UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARITA TURNER #817099
   a/k/a Marita Talley,

      Plaintiff,

Case No. 13-12744

v.

Honorable Robert H. Cleland
Magistrate Judge Laurie J. Michelson

DANITRA CALLINGTON, *et al.*,

      Defendants.

_____/

**REPORT AND RECOMMENDATION TO (1) GRANT DEFENDANTS CALLINGTON
AND DAVIS'S MOTION TO DISMISS [13] AND (2) DENY PLAINTIFF'S
MOTION FOR RELIEF PURSUANT TO FED. R. CIV. P. 12(b)(6) [16]**

This is a *pro se* prisoner civil rights action filed by Plaintiff Marita Turner. All pretrial proceedings have been referred to this Court. (Dkt. 10.) Defendants Danitra Callington and Voncha Davis have filed a motion to dismiss for failure to state a claim and on the basis of Eleventh Amendment qualified immunity.[1] (Dkt. 13.) Plaintiff's response is styled as "Brief in Support of Motion for Relief Pursuant to Fed. R. Civ. P. 12(b)(6)." (Dkt. 16) Having carefully reviewed the relevant pleadings and briefing, the Court RECOMMENDS that (1) Callington and Davis's Motion to Dismiss be GRANTED without prejudice; and (2) that Plaintiff's Motion for Relief Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. 16) be DENIED without prejudice. Plaintiff should move to amend her complaint to replead her Eighth Amendment contamination-of-food claim, if she can, with allegations that explain how individual defendants were personally involved in the alleged contamination of her food or knew of it and could have prevented it.

---

[1]The Complaint names two other defendants: Sergeant Fisher, who acknowledged service on January 15, 2014, (Dkt. 18) and Officer Oakley, who has not yet been served (Dkt. 20).

**I.    BACKGROUND**

The following factual allegations are taken from the documents attached to the Complaint and are assumed true for the purpose of deciding this motion.[2]

Plaintiff Marita Turner is an inmate at Women's Huron Valley Correctional Facility ("WHVC"). (*See* Dkt. 1, Compl.) In WHVC's General Population, inmates can see their food being served. (Compl. at Pg ID 4.) But in Segregation, the food is delivered in trays that can be opened and closed. (*Id.*) Plaintiff began bleeding from her rectum after being put in Segregation. (Compl. at Pg ID 5.) She did not have rectal bleeding before she was in Segregation, or after leaving. (Compl. at Pg ID 4, 5, 6, 7.) She therefore knew that her food had been tampered with before it was delivered to her. (Compl. at Pg ID 5.) On several occasions she asked for a different tray and "saw the difference." (*Id.*)

In June 2012, Officer Hamilton gave Plaintiff a tray of food "from the level 4 side," consisting of cottage cheese, potatoes, and green beans. (Compl. at Pg ID 4, 6.) Two days later, Plaintiff bled from her rectum. (*Id.*)

On July 14, 2012, Defendant Callington brought Plaintiff food. (*Id.*) While there she stated, "You're bleeding from your rectum wipe ya ass." (Compl. at Pg ID 4, 6.) Prisoner Golden ("Tink") asked for maxi pads, and Officer Mix gave another inmate maxi pads. (*Id.*)

---

[2] Defendants ignore the attachments to Plaintiff's Complaint and focus on its one-paragraph "Statement of Facts," arguing that "[t]here are no allegations whatsoever against any of the individual defendant[s]." (Dkt. 13, Mot. at 1.) But in ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to the Plaintiff's claims, (2) matters of which a court may properly take notice, and (3) public documents. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007); *Amini* v. *Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001). The court's consideration of these documents does not require conversion of the motion to one for summary judgment. *Greenberg* v. *Life Ins. Co. of Virginia,* 177 F.3d 507, 514 (6th Cir. 1999).

Plaintiff filed a grievance on August 4, 2012, describing these events and specifically naming Defendant Callington. (Compl. at Pg ID 6.)

On August 9, 2012, Plaintiff bled from her rectum again with the "flow of a period," which she knew was abnormal. (*Id.*)

Plaintiff has requested to order her own food, but is not allowed to do so in Segregation. (Compl. at Pg ID 4.)

Plaintiff wrote a letter to Health Care on August 9, 2012, asking for "an investigation of the chow hall and witnesses all from foodservice that sends food to segregation." (Compl. at Pg ID 5.) She said the ARUS, or Assistant Resident Unit Supervisor, told her that everything is watched on camera, but Plaintiff believed that was not accurate. (*Id.*) Plaintiff said "the Officers know my food is being tampered with." (*Id.*) She also noted that the problems "[o]nly occurred on 2nd shift." (*Id.*)

## II.   ANALYSIS

### A. Legal Standard

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the Plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the Plaintiff," but the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). To survive a motion to dismiss under Rule 12(b)(6), a Plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a "probability requirement," but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When applying these standards to a complaint drafted by a *pro se* plaintiff, a court must be mindful that allegations in the complaint are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, "the administration of justice is not wellserved by the filing of premature, hastily drawn complaints," and even a *pro se* litigant "must conduct enough investigation to draft pleadings that meet the requirements of federal rules." *Burnett v. Grattan*, 468 U.S. 42, 50 & n.13 (1984). Even "the lenient treatment generally accorded to *pro se* litigants has limits," and *pro se* litigants are "not automatically entitled to take every case to trial." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

### B. Plaintiff's Arguments in Response to the Motion

In response to Defendants' motion, Plaintiff filed a "Brief in Support of Motion for Relief Pursuant to Fed. R. Civ. P. 12(b)(6)" that provides some clarity about the nature of her claims. (*See* Dkt. 16, Resp.) She argues that her allegations establish an "Eighth Amendment food deprivation claim under 1983" (Resp. at Pg ID 64) and a claim for deliberate indifference to a serious medical concern (Resp. at Pg ID 67). Plaintiff also cites relevant cases, albeit without discussion. (*See* Resp. at Pg ID 69–70.)

One of those cases, *Kaufman v. Carter*, concerned prison officials' alleged violation of an inmate's Eighth and Fourteenth Amendment rights by their deliberate indifference to his serious medical needs. 952 F. Supp. 520, 524 (W.D. Mich. 1996). The court found that as to some of the defendants, the plaintiff adequately pled facts that, if proved, would constitute a violation of his rights; the complaint alleged that the defendants intentionally failed to provide him with the rubbing

4

alcohol and wrapping materials needed to maintain the stumps of his amputated legs in a condition that would accept prostheses, and as a result, he lost the ability to ambulate until new prostheses could be fitted. *Id.* at 527. As to some of the defendants, however, the plaintiff was unable to directly implicate them by showing that they were aware of his medical needs, and the court granted summary judgment in their favor. *Id.*

In *Bass v. Coughlin*, another case cited by Plaintiff, the Second Circuit affirmed denial of the defendants' motion for summary judgment on the ground of qualified immunity where they had denied a prisoner's requests for meals prepared in accordance with the dietary laws of his religion. 976 F.2d 98, 99 (2d Cir. 1992).

In *Cockcroft v. Kirkland*, which Plaintiff cites, a federal district court in California held that a prisoner stated a cognizable § 1983 claim under the Eighth Amendment where he alleged that he asked the defendants for clean sheets because his sheets were soiled with blood from the sores on his buttocks and they refused to help. 548 F. Supp. 2d 767, 771 (N.D. Cal. 2008).

Plaintiff cites two cases that rejected the qualified immunity defense because there is a clearly established right to be free from retaliation for filing a prison grievance or speaking out publicly about prison conditions. *See Abel v. Miller*, 824 F.2d 1522, 1534 (7th Cir. 1987); *Brewer v. Kamas*, 533 F. Supp. 2d 318, 331 (W.D.N.Y. 2008).

Plaintiff also cites a prisoner civil rights case in which the court granted summary judgment to defendants on the plaintiff's claim for retaliation based on a correctional officer's refusal to serve plaintiff his meal tray; the court found that plaintiff "has produced no evidence that a substantial motivating factor in [the officer's] alleged refusal to serve [plaintiff] his meal tray was retaliation." *Thomas v. Walton*, 461 F. Supp. 2d 786, 796 (S.D. Ill. 2006).

Plaintiff's response brief also provides new factual information about the defendants in

support of her claims:

> The Plaintiff "specifically" states in step II staff verbal abuse, defendants Danitra Callington, which works second shift. Second shift always has a Sargeant, Sargeant Fisher is named. Three to four employees which officers Voncha Davis, Oakley, and Danitra Callington were named. The food has to go through "them" before it gets to Plaintiff, which "physical abuse" can be added.

(Resp. at Pg ID 69.) She also provides two timelines that repeat some information from the Complaint but add some new information as well. The new information in the first timeline is as follows:

> 7-14-12 . . . I asked officer Callington to see a nurse since I was bleeding out of my rectum. Still no nurse. 5-7pm 17:00-19:00pm. On 7-16-12 I submitted a grievance. Told nurse what occurred. 6 pm 18:00 pm.
>
> 8-5-12 . . . When the nurse made round, she asked if I took medication, the nurse told the officer no. . . .
>
> 8-10-12 Sargeant Goffrey stated she would email Mr. Marbny about kosher tray. No response from either 6-7pm officials time 18:00-19:00pm.
>
> 8-13-12 Officer Callington brought me sub tray for dinner, that I did not order. I refused tray and was denied a regular tray like requested. 4:30pm officials time 16:30pm.
>
> 8-23-12 General Population call out to healthcare 12:30pm officials time 12:30pm upon arriving one nurse white and pregnant, other nurse black and petite. The nurses said I could not been seen unless paid co payment. I was not seen. 1:00pm officials time 13:00pm.

(Resp. at Pg ID 73–74.) The second timeline provides:

> 7-14-12 Bleed out of rectum.
>
> When notified officials and healthcare nothing was done.
>
> 8-5-12 Bleed out of rectum.
>
> Still no response from healthcare.
>
> 8-9-12 Bleed really heavy like period flow out of rectum.

6

> Still no examine from healthcare.
>
> 8-9-12 Plaintiff wrote healthcare.
>
> 8-9-12 Plaintiff wrote hearing investigator.
>
> After knowing that her situation was life threatening and no immediate response from officials, healthcare, for that matter Grievance Coordinator, Deputy DeAngelo, and Warden Milicent. All knew as of 7-16-12. Officer knew 7-14-12 which was told about situation no immediate medical care, or medical care at all.

(Resp. at Pg ID 75.)

The Court will consider the additional allegations made in Plaintiff's response brief for the sake of efficiency, on the assumption that if the Court addressed only the Complaint, the Plaintiff would seek leave to amend the Complaint to add them. *See* Fed. R. Civ. P. 15(a)(2) (providing that a "court should freely give leave [to amend the pleadings] when justice so requires"); *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) ("The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings."). The Court foresees little prejudice to Defendants in such an amendment at this early stage of the case; some of the defendants have not yet been served, and it does not appear that discovery has even begun. Nor does there appear to be any bad faith or undue delay on the part of Plaintiff. *See Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458 (6th Cir. 2001) (listing factors to be considered in determining whether to grant a motion to amend a pleading: "Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment").

### C. Conditions of Confinement

Plaintiff may be able to state a claim for violation of the Eighth Amendment based on the conditions of her confinement. The Eighth Amendment prohibits any punishment that violates

civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks and citation omitted). To establish an Eighth Amendment violation based on conditions of confinement, a prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Contaminated food can constitute an Eighth Amendment violation. In *Eaddy v. Foltz*, for example, the Sixth Circuit held that the district court's dismissal of the plaintiff's claim was premature because his allegation that "the food was served through a slot and touches the top of the slot contaminating it with germs" could constitute a violation of the Eighth Amendment "depending upon . . . severity and pervasiveness." 782 F.2d 1041, at *2 (6th Cir. 1985) (unpublished). And in *Berryman v. Johnson*, the Sixth Circuit held that the plaintiffs' showing of "unsanitary food and unsanitary eating conditions caused by birds, mice, cockroaches, and totally inadequate dish washing" was sufficient to defeat a motion for summary judgment even where the plaintiffs had not argued that the unsanitary conditions made them sick. 940 F.2d 658, at *10 (6th Cir. 1991) (unpublished). The court reasoned: "We have no doubt that 'life's necessities' include food that does not subject one to serious risk of illness." *Id.*; *see also Pittman v. Kolb*, No. 07-14892, 2008 WL 2622949, at *34 (E.D. Mich. July 2, 2008) (holding that there was a genuine issue of material fact as to whether the plaintiff's Eighth Amendment rights were violated where he alleged that the defendant intentionally exposed his food to contamination by taking it into the cell of an inmate who was infected with MRSA); *Billioups v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 11-0195, 2011 WL 3664682, at *1 (M.D. Tenn. Aug. 19, 2011) (finding plaintiff stated a claim where he alleged vomiting and diarrhea on four occasions as a result of eating contaminated food).

    Viewing the allegations in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, especially given her pro se status, Plaintiff has sufficiently alleged an Eighth

Amendment violation. Plaintiff says that on at least four occasions over about three months (June, July 14, August 5, and August 9, 2012), she was served food that she believes caused her to bleed heavily from her rectum. (Compl. at Pg ID 4, 6; Resp. at Pg ID 73.) She further alleges that she did not have rectal bleeding before or after her confinement in Segregation, and that while she was experiencing rectal bleeding in Segregation she could not see her food being served. (*See* Compl. at Pg ID 4–6.) On these allegations, Plaintiff was subjected to a sufficiently "serious risk of illness" as to make the conditions of her confinement cruel and unusual.

But the analysis cannot end there. Federal Rule of Civil Procedure 8 requires that a plaintiff attribute factual allegations to particular defendants. Fed. R. Civ. P. 8; *Twombly*, 550 U.S. at 555 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). A complaint that does not allege that the defendant was personally involved in the alleged deprivation of federal rights is subject to dismissal. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (unpublished). In the Complaint, Plaintiff alleged that Defendant Callington brought her food on at least one occasion while she was in Segregation. (Compl. at Pg ID 4, 6.) She also alleged that Callington was aware that Plaintiff was bleeding from her rectum on at least one occasion. (*Id.*) This is quite tenuous. Much closer to stating a plausible claim is the statement in Plaintiff's response brief that her food had to "go through" Defendants Davis, Oakley, and Callington "before it gets to Plaintiff." (Resp. at Pg ID 69.) But even with this allegation, it is equally plausible that Plaintiff's food was tampered with before it reached Callington and Davis, without their knowledge and outside of their control. To adequately state her claim against Defendants Davis and Callington, Plaintiff must amend her complaint, if she can, to include allegations that explain how these Defendants were personally involved in the alleged contamination of her food or knew of it and could have prevented it.

9

**D. Deliberate Indifference**

Plaintiff has not stated a claim for deliberate indifference to a serious medical need. A prisoner has adequately stated a cause of action for violation of the Eighth Amendment "when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)). Such claims have both an objective and a subjective component. *Id.* at 648. In order to satisfy the objective component, the prisoner must show that the medical need is "sufficiently serious." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837).

Plaintiff has alleged that on July 14, 2012, Officer Callington saw that she was bleeding from her rectum. (Compl. at Pg ID 4, 6.) In her brief, Plaintiff stated further: "7-14-12 . . . I asked officer Callington to see a nurse since I was bleeding out of my rectum. Still no nurse. 5-7pm 17:00-19:00pm. On 7-16-12 I submitted a grievance. Told nurse what occurred." (Resp. at Pg ID 73.) And: "7-14-12 Bleed out of rectum. When notified officials and healthcare nothing was done." (Resp. at Pg ID 75.) Plaintiff also said in her brief that she was seen by a nurse on August 5, and she may have had an opportunity to see a nurse on August 23, but the nurses told her she had to make a copayment

10

first. (Resp. at Pg ID 73.) She has not alleged that the care she received from the nurses was insufficient. Although it appears she did not receive medical care for at least two days after Officer Callington was aware that she was bleeding, Plaintiff has not alleged that she was in pain or suffered any other harm as a result. Absent such allegations, Plaintiff has not shown that her medical need was objectively serious. She has not stated a claim for deliberate indifference in violation of the Eighth Amendment. *See Moore v. Michigan*, No. 07-561, 2008 WL 724151 (W.D. Mich. Mar. 17, 2008) (holding that plaintiff had not stated an Eighth Amendment deliberate indifference claim for failure to treat bleeding from a laceration in his neck where he did "not allege that he was in pain or sustained any additional harm"); *Striegle v. Michigan Dep't of Corr.*, No. 07-570, 2008 WL 2874195 (W.D. Mich. Feb. 14, 2008) (granting summary judgment to defendants where plaintiff had complained of excessive rectal bleeding but did not state how his treatment was delayed or that anything could have been done in advance to prevent the incidents that led to his hospital visits). *Cf. Blackmore*, 390 F.3d at 899–900 (finding plaintiff's appendicitis was a sufficiently serious medical need although his appendix did not rupture and an appendectomy was successfully performed because he was subjected to unnecessary infliction of pain when defendants delayed treatment).

**E. Retaliation**

Plaintiff failed to state a claim for violation of her First Amendment right to be free of retaliation. A retaliation claim has "three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). First, Plaintiff has not actually alleged that Defendants retaliated. To the extent that she intended to allege that the Defendant officers

11

tampered with her food or allowed someone to tamper with her food in retaliation against her for something she did to them, she falls far short. She has not made any allegations about what it was that caused Defendants to retaliate against her, or on what basis she believes they acted with a retaliatory motive.

There is evidence that Plaintiff engaged in protected conduct, the first element of a retaliation claim. The grievance form attached to the Complaint establishes that Plaintiff filed a grievance against Defendant Callington on July 16, 2012 (Compl. at Pg ID 6), and filing a grievance is protected conduct, *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000). But there is no allegation in the Complaint of any action taken by Officer Callington after the grievance was filed, much less an adverse action with a causal connection to the grievance. Plaintiff did state in her brief that Callington brought her a "sub tray" of food that she had not ordered and denied her request for a regular tray on August 13, 2012. (Resp. at Pg ID 75.) But there is no indication that the sub tray made Plaintiff bleed, and even if there was, there is nothing that connects that occurrence to the grievance she filed against Callington, especially since it was not the first time it happened. Accordingly, the Court finds that Plaintiff has not stated a claim for retaliation, even when the additional allegations in her brief are considered.

### F. Violation of MDOC Policies

In the Complaint, Plaintiff alleged that "these defendants violated policy and procedure." (Compl. at 3.) Her brief is more specific. She quotes from an MDOC Policy Directive that requires staff to "discourage through appropriate means any person's use of, derogatory, demeaning, humiliating, or degrading actions or language toward others," and prohibits "retaliating against a prisoner who refuses to participate in prohibited staff conduct or who files a complaint or cooperates in an investigation of prohibited staff conduct," "[a]ny act or lack of care, whether by willful act or

12

neglect, that injures or significantly impairs the health of any prisoner," and "[w]illful infliction of mental distress, degradation, or humiliation." (Resp. at Pg ID 68 (quoting MDOC Policy Directive 03.03.130(K)(3)&(4), I(6)); *see also* Resp. at Pg ID 88, 89.) *See also* http://www.michigan.gov/documents/corrections/03_03_130_270875_7.pdf.

Failure to follow prison policies and procedure directives does not in itself establish a constitutional violation where the directive does not create a protectible liberty interest. *See Spears v. Engstrom*, No. 11-15542, 2012 WL 2992603, at *2 (E.D. Mich. July 20, 2012) (discussing case law). Plaintiff has not stated a claim for retaliation or deliberate indifference to serious medical need, and there is no constitutional right to be free of derogatory language, humiliation, or mental distress such as that alleged here. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (verbal abuse or harassment does not constitute punishment in violation of the Eighth Amendment). These allegations do not state a claim.

**F. Qualified Immunity**

Defendants argue that "Calli[n]gton and Davis are entitled to qualified immunity because Plaintiff has failed to show that Defendants violated clearly established rights." (Mot. at 6–7.) Qualified immunity shields state officials sued in their individual capacity from liability for their reasonable discretionary acts. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Moldowan v. City of Warren*, 578 F.3d 351, 396 (6th Cir. 2009). In deciding whether an official is entitled to qualified immunity, a court asks two questions, in any order: (1) whether the plaintiff has shown that the official violated his constitutional rights, and (2) whether those rights were "clearly established" at the time the official acted. *Pearson*, 555 U.S. at 232, 236. As discussed above, if the Complaint is amended to include allegations connecting Callington and Davis to the contamination of Plaintiff's food, Plaintiff can show that Callington and Davis violated her Eighth Amendment rights. And in

light of the case law discussed above, Plaintiff's right to food free of contamination and the risk of illness was clearly established at the time Callington and Davis acted. *See Eaddy*, 782 F.2d 1041, at *2; *Berryman*, 940 F.2d 658, at *10; *Pittman*, 2008 WL 2622949, at *34; *Billioups*, 2011 WL 3664682, at *1. Accordingly, Callington and Davis are not entitled to qualified immunity for Plaintiff's Eighth Amendment contamination-of-food claim.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court RECOMMENDS that (1) Callington and Davis's Motion to Dismiss be GRANTED without prejudice; and (2) that Plaintiff's Motion for Relief Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. 16) be DENIED without prejudice. Plaintiff should move to amend the Complaint to replead her Eighth Amendment contamination-of-food claim, if she can, with allegations that explain how individual defendants were personally involved in the alleged contamination of her food or knew of it and could have prevented it.

### IV. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection

must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

        s/Laurie J. Michelson
        LAURIE J. MICHELSON
        UNITED STATES MAGISTRATE JUDGE

Dated: March 5, 2014

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 5, 2014.

        s/Jane Johnson
        Deputy Clerk